UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| QUILBILLIES LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> FIRST AMERICAN TITLE INSURANCE COMPANY, <br><br> Defendant. | CASE NO. C24-5246 BHS <br><br> ORDER |

THIS MATTER is before the Court on defendant First American Title Insurance Company's motion for summary judgment, Dkt. 15, and on plaintiffs Susan Fuller, Quilbillies LLC, and William Stern's motions to compel, Dkt. 17, to certify questions to the Washington Supreme Court, Dkt. 19, and to continue certain pre-trial deadlines, Dkt. 32.

### I. BACKGROUND

Fuller and Quilbillies each own property near Rice Lake in Quilcene, Washington. Dkt. 1 at 3–4. First American insured title to Fuller's property in 2004, and to Quilbillies' property in 2016. Fuller's policy was for $56,000 (Dkt. 16-1), and Quilbillies' policy was

ORDER - 1

for $50,000 (Dkt. 16-2). Stern is Quilbillies' sole member, but he is not named as an insured on Quilbillies' title insurance policy. Dkt. 16-2 at 7.

In the face of a covered claim, each policy expressly provided First American the option to pay the full amount of the policy (and any fees and costs incurred), and terminate its obligations under the policy, including any liability or obligation to defend, prosecute or terminate any litigation. Fuller's policy provided:

> COMPANY'S DUTY TO DEFEND AGAINST COURT CASES
>
> We will defend your title in any court case as to that part of the case that is based on a Covered Title Risk insured against by this Policy. We will pay the costs, attorneys' fees, and expenses we incur in that defense.
>
> We can end this duty to defend your title by exercising any of our options listed in Item 4 of the Conditions.
>
> \*\*\*
>
> 4.  OUR CHOICES WHEN YOU NOTIFY US OF A CLAIM
>
> After we receive your claim notice or in any other way learn of a matter for which we are liable, we can do one or more of the following:
>
> \*\*\*
>
> f.  Cancel this policy by paying the Policy Amount, then in force, and only those costs, attorneys' fees and expenses incurred up to that time which we are obligated to pay.

Dkt. 16-1 at 9, 14–15.

Quilbillies' policy similarly provided:

> 7.  **OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY**
>
> In case of a claim under this policy, the Company shall have the following additional options:

ORDER - 2

> (a) To Pay or Tender Payment of the Amount of Insurance.
>
> To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay. Upon the exercise by the Company of this option, all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in this subsection, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

Dkt. 16-2 at 5.

In September 2021, Stern informed First American that trespassers had been crossing Quilbillies' property, asserting they had an easement to do so. Dkt. 16-3. In February 2022 Stern sent First American a letter from his neighbors' attorney, which claimed they had an easement over Quilbillies' property. Dkt. 16-4. In March, First American accepted Quilbillies' claim and paid Quilbillies its $50,000 policy limit, purporting to terminate its obligations to Quilbillies under the policy.

Fuller tendered a similar claim to First American in July 2022. Dkt. 16-7. In September, First American similarly accepted Fuller's claim and paid her the $56,000 policy limit, purporting to terminate its obligations under the policy, including the obligation to defend Fuller's title from the neighbors' "easement" claims. In November 2022, the neighbors sued Fuller, Quilbillies, and Stern in Jefferson County Superior Court, asserting they had an easement over Fuller's and Quilbillies' properties. Dkt. 1 at 6.

Fuller, Quilbillies, and Stern sued First American here in March 2024. Dkt. 1. Stern contends that though he is not a named insured, First American owed him duties.

All three plaintiffs contend they sought a defense from their neighbors' easement claim, and that first American never investigated or defended that claim. They assert First American did not communicate with them, and instead "abandoned them" and put its own monetary interests above theirs, by unilaterally paying them policy limits. They seek a declaratory judgment that they are entitled to coverage under their First American title policies, and that First American is liable for its fees in this case under *Olympic Steamship*. Dkt. 1 at 12. They assert that First American breached its contract with Fuller and Quilbillies, and that First American acted in bad faith, engaged in constructive fraud, and was negligent. *Id*. at 13–17.

First American seeks summary judgment on all claims, arguing its policies plainly provided it the option to pay policy limits and terminate any ongoing obligation to defend or indemnify its insureds. Dkt. 15.

Fuller, Quilbillies and Stern ask the Court to compel discovery into First American's intent in drafting the policy, its claims file, its claims handling training and procedures, and information about First American's employees' compensation. Dkt. 17. They also ask the Court to certify to the Washington Supreme Court questions about the effect of their First American policies, including whether they are "indemnity only," and whether a title insurer can unilaterally cancel a policy. Stern also asks this Court to ask the Supreme Court whether a title insurer owes any duty to the sole member of an insured LLC. The plaintiffs argue that Washington courts have not resolved these questions.

Because the policies plainly permitted First American to pay policy limits and terminate its obligation to defend, and such language the policy language is effective

ORDER - 4

under Washington law, First American's motion is granted, and the motion to certify is denied. Plaintiffs' remaining motions are denied as moot.

## II.    DISCUSSION

**A.    First American's summary judgment motion is GRANTED.**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52.

The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24. There is no requirement that the moving party negate elements of the non-movant's case.

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson*, 477 U.S. at 248.

Interpretation of an insurance contract is a question of law. *Woo v. Fireman's Fund Ins. Co.*, 161 Wash. 2d 43, 52 (2007). Terms are to be interpreted as the "average person purchasing insurance" would understand them. *Id*. The rule that ambiguous contract language is to be construed in favor of the insured and most strongly against the insurer should not be permitted to have the effect of making a plain agreement ambiguous. *McAllister v. Agora Syndicate, Inc.,* 103 Wn. App. 106, 109 (2000), (citing *West Am. Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 80 Wn.2d 38, 44 (1971)). If the language is clear and unambiguous, the court must enforce it as written and may not create ambiguity where none exists. *Am. Nat'l Fire Ins. v. B&L Trucking & Constr. Co.*, 134 Wn.2d 413, 419 (1998).

### 1.     **First American did not breach the contract as a matter of law.**

First American argues that its policies unambiguously gave it the right to pay policy limits and terminate its obligations to its insureds. It argues that the Washington Court of Appeals held in an indistinguishable case that such policy language is effective, and that once the title insurer pays the policy limits, its obligation to defend or further indemnify is terminated. Dkt. 15 at 10 (citing *Batdorf v. Transamerica Title Ins. Co.*, 41 Wash. App. 254, 258 (1985)).

The plaintiffs respond that First American's duty to defend remained after it paid policy limits, and argue that it violated its extra-contractual duties to them by unilaterally paying their policy limits. They also contend that First American owed duties to Stern as a third-party beneficiary of the contract between Quilbillies and First American. Dkt. 24 at 2 and 8.

They argue and that each title policy "expressly promised a duty to defend," and that policies' "plain language" "undercuts" First American's "position that it did not promise to defend." They emphasize that the duty to defend is broader than the duty to indemnify, citing cases that do not involve title insurance policies. *Id*. at 9–11 (citing *Perez Trucking v. Ryder Truck*, 76 Wn. App. 223, 233–34 (1994)). They argue that "courts agree that title insurance policies are like general liability policies because '[l]iability insurance is third-party coverage and provides policyholders with two main benefits: payment and defense. That is, insurance companies generally owe their insureds a duty to pay and a duty to defend.'" Dkt. 24 at 12 (citing *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 129 (2008)).

But *Onvia* did not involve a title insurance policy. Instead, it answered a certified question from the United States District Court regarding the viability of a "procedural" bad faith claim against a liability insurer in the absence of a "duty to defend, settle or indemnify"—in other words, in the absence of coverage. 165 Wn.2d at 130–132. It held that such a claim could be viable. It did not hold or suggest that "title insurance policies are like general liability policies," or that a title insurer's contractual option to pay policy limits and terminate its obligations under the policy is not enforceable. Washington

courts instead acknowledge that title insurance policies are *not* like auto policies or comprehensive general liability policies; they are, as First American asserts, unique. *See, e.g.*, *Farrington v. Commonwealth Land Title Ins. Co.*, 86 Wn. App. 399, 936 P.2d 1157 (1997) ("unlike most insurance, which aims to reduce risk from unforeseen future events, title insurance primarily seeks to eliminate risks and losses caused by defects in title arising out of past events"). Plaintiffs' reliance on authority discussing other kinds of insurance and other kinds of insurance claims is misplaced.

Plaintiffs' efforts to distinguish *Batdorf* are similarly unpersuasive. *Batdorf* is squarely on point. There, as here, the title insurance policy expressly permitted the insurer to terminate its obligations to defend and indemnify by paying the insured the policy limit. *Batdorf*, 41 Wn. App at 256–257. The insurer exercised that option, and terminated its defense of its insureds in a quiet title action. The insureds defended and the case, and sued their insurer. The trial court granted the insurer's summary judgment motion and the court of appeals affirmed. It explained that the issue "is whether Transamerica's duty to defend its insureds in an action brought against them attacking their title survives Transamerica's tender to the insureds of the face amount of their title insurance policies." *Id*. It held that the duty to defend did not survive the tender:

> By paying up, the insurer removed *all* of its further liability. Therefore, attorneys' fees, incurred *after* the payment, were incurred about a "claim" which was no longer covered by the policy. Therefore, absent a duty to defend there can be no breach and without a breach of duty to defend, Transamerica cannot be held liable for attorneys' fees incurred after it paid up the policy limit.

*Id*. at 258 (citing *Securities Serv. Co. v. Title Ins. Co*. 20 Wn. App. 664, 672 (1978) ("[T]he policy clearly gave Transamerica the *option* to settle adverse claims, pay its insured the policy limits or defend to judgment."); *see also Mansur Properties LLC v. First Am. Title Ins. Co.*, 635 F. Supp. 3d 1116, 1130 (W.D. Wash. 2022) (title insurer had express option to pay a claim instead of settling or defending, even if the insured would prefer otherwise).

It is plaintiffs' argument, not First American's, that asks the Court to ignore the "plain language" of the subject insurance policies. There is no authority for the proposition that the contract's plain language is unenforceable, and, consistent with well-settled Washington law on the interpretation of insurance policy language, the only authority addressing the issue such has confirmed that the language is effective. First American's conduct was not a breach of its title policy, as a matter of law. First American's summary judgment motion on Fuller's and Quilbillies' breach of contract claim is **GRANTED** and that claim is **DISMISSED**.

**2.     First American owed no Stern no duties under the policy.**

The conclusion that First American did not breach its contract as a matter of law would apply to Stern even if he was also a named insured. But he was not. His claim that First American owed him obligations equal to (or greater than) those it owed to his LLC, the named insured, is unsupportable. First American's summary judgment motion on Stern's breach of contract claim is **GRANTED** and that claim is **DISMISSED**.

### 3. Plaintiffs' bad faith claims fail as a matter of law.

First American argues that the conclusion it did not breach its title contract is fatal to plaintiffs' extra-contractual "bad faith" claims. It argues, correctly, that it did not deny plaintiffs' claims; it accepted and paid those claims, in full, as the parties agreed it could do in the face of a claim.

Plaintiffs' argument that their extra-contractual claims survive even if First American prevails on the breach of contract claim is unsupported. The claims are based on the assertions that (1) First American put its own interests above theirs by exercising its contractual right to pay them policy limits rather than defend their title, and (2) it denied their claims for a defense.

The former claim does not survive the failure of plaintiffs' breach of contract claim; First American exercised its clear contractual right to pay the plaintiffs the limit of their title policy. That is not bad faith as a matter of law. The latter is foreclosed by the undisputed fact that First American paid the claim in full. Once it did so, the subsequent lawsuit was not a "claim" covered under the policy. *Batdorf* at 258.

First American's summary judgment motion on plaintiffs' extracontractual claims is **GRANTED** and those claims are **DISMISSED**.

### B. Plaintiffs' motion to certify questions is DENIED.

Plaintiff asks the Court to certify three questions to the Washington Supreme Court, asserting that they are open questions under Washington law. The questions relate to the nature of a title insurance policy, whether the provision permitting an insurer to pay a claim in full and terminate any ongoing obligations is enforceable, and whether a title

insurer owes a duty to the "sole proprietor" of an insured LLC when he is not named on the title policy (and does not directly own the property). Dkt. 19. The first two are not open questions, and there is no authority for the proposition that First American owed uninsured Stern some greater duty than it owed its insured, Quilbillies. The motion to Certify is **DENIED**.

**C.    Plaintiffs' remaining motions are DENIED as moot.**

Because plaintiffs' claims all depend on their breach of contract claim, and that claim is without merit as a matter of law, plaintiffs' motions to compel, Dkt. 17, and to continue pre-trial deadlines, Dkt. 32, are **DENIED**.

\*\*\*

First American's summary judgment motion, Dkt. 15 is **GRANTED**. Plaintiffs' motions, Dkts. 17, 19, and 32, are **DENIED**. Plaintiffs' claims are **DISMISSED with prejudice**.

The Clerk shall enter a JUDGMENT and close the case.

**IT IS SO ORDERED**.

Dated this 26th day of December, 2024.

_____
BENJAMIN H. SETTLE
United States District Judge